## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. | 3:02cr376 (CFD) |
| | : | Civil No. | 3:04cv1743 (CFD) |
| | : | | |
| v. | : | | |
| | : | | |
| | : | February 11, 2005 | |
| JONATHAN ALVARADO | : | | |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION and AMENDED MOTION TO VACATE AND SET ASIDE THE SENTENCE PURSUANT TO 28 U.S.C. § 2255

The Government hereby opposes defendant Alvarado's Motion and Amended Motion to Vacate and Set Aside the Sentence and requests the Court deny the defendant's motions.

### I. Background

Indictment

On December 30, 2002, a grand jury sitting in Hartford, Connecticut returned a twelve-count indictment which charged the defendant, along with two co-defendants, with heroin distribution offenses. Specifically, in Count One, the defendant was charged with conspiracy to possess with the intent to distribute and distribution of 100 grams or more of heroin, in violation of 28 U.S.C. § 846 and 21 U.S.C. §841(b)(1)(B). In Counts Two through Twelve, the defendant was charged with substantive counts of possession with the intent to distribute and distribution of a mixture and substance containing a detectable amount of heroin, in violation of 28 U.S.C. § 841(b)(1)(C).

Guilty Plea

On May 5, 2003, the defendant pleaded guilty--pursuant to a written plea agreement--to

Count One, that is conspiring to possess with the intent to distribute and distribution of 100

grams or more of heroin.  A five-year mandatory minimum statutory term of imprisonment

applies to this offense.[1]   In the written plea agreement, the defendant admitted and stipulated to

relevant conduct, specifically admitting that more than 100 grams but less than 400 grams of

heroin is attributable to him for sentencing purposes.  (Doc. 54, page 3).  The defendant also

stipulated that three levels should be added for his role in the offense– manager or supervisor--

pursuant to Section 3B1.1(b). Id.  The defendant further stipulated that he is subject to the 5 year

mandatory minimum term of imprisonment and he agreed that he is not eligible for any benefit

under the safety valve provision.  Id.

Waiver of Right to Appeal or Collaterally Attack Sentence

The defendant expressly waived his right to collaterally attack the conviction and

sentence.  The written plea agreement (Doc. 54, p.4) contains the following waiver language:

> It is specifically agreed that the defendant will not appeal or
> collaterally attack in any proceeding, including but not limited to a
> motion under 28 U.S.C. § 2255 or a challenge to venue, the
> conviction or sentence of imprisonment imposed by the Court if
> that sentence does not exceed 78 months' imprisonment, even if
> the Court reaches a sentencing range permitting such a sentence by
> a Guideline analysis different from that specified above.  The
> defendant expressly acknowledges that he is waiving his appellate
> rights knowingly and intelligently.

During the course of the change of plea proceeding, the defendant's waiver of his

appellate rights was discussed on multiple occasions. First, in its remarks, the Government

addressed the defendant's waiver of his right to collaterally attack the conviction and sentence.

---

[1]   The mandatory minimum penalty is clearly articulated in the written plea agreement
section containing the full description of all applicable penalties. (Doc. 54, p.2).

2

Government:    On the top of page four is a very important section, although it's fairly short, one paragraph.  And that is that this defendant is agreeing to waive his right to appeal or collaterally attack the sentence under certain circumstances.  Specifically, your Honor, the defendant will not directly attack or appeal the sentence or appeal what's commonly known as a habeas corpus proceeding, your Honor, if the conviction or sentence imposed by this Court, if such sentence does not exceed 78 months imprisonment.

Transcript of 5/5/03, p.20.

Second, after the terms of the plea agreement had been described by the Government, the Court addressed the waiver issue with the defendant.

Court:    First thing I want to do, Mr. Alvarado, is have you take a look at that waiver of right to appeal or collaterally attack sentence on page four.  Could you talk a look at that in the document.  I just want you to make sure you understand that, sir.  I want you to take a look at that and read it one more time.  Mr. Alvarado, have you had a chance to read that again?

Defendant:    Yes.

Court:    As I understand it, it provides that if I give you a sentence of 78 months of incarceration or less, you do not have the right to appeal that sentence.  Do you understand that?

Defendant:    Yes, your Honor.

Court:    And that would apply in what's called either a direct appeal or through a habeas corpus proceeding which is that reference to 28, U.S. Code, Section 2255.  Do you understand all that?

Defendant:    Yes, your Honor.

Transcript of 5/5/03, p.21-22.

Defendant Informed of Essential Elements

In the change of plea hearing, the Court and the Government separately informed the defendant of the essential elements which must be proven by the government beyond a

reasonable doubt if the defendant were to proceed to trial, rather than plead guilty. (Transcript of 5/5/03, p.16 (Government), and Transcript of 5/5/03, p.30-32 (Court)). These essential elements are also contained in the written plea agreement signed by the defendant (Doc. 54, page 1). In each instance it was made clear that the government would be required to prove that it was reasonably foreseeable to the defendant that the conspiracy involved more than 100 grams of heroin.

Defendant's Admissions During Change of Plea Hearing

In addition to the admissions and stipulations contained in the written plea letter, the defendant also admitted that he was responsible for 153.9 grams of heroin during the change of plea hearing. After the prosecutor summarized the offense conduct and what the government's proof would include if the matter had proceeded to trial, the Court asked, "Mr. Alvarado, do you agree with the prosecutor's summary of what you did?" The defendant answered, "Yes, your Honor." (Transcript of 5/5/03, p.32-34) In that summary, the prosecutor indicated that an undercover law enforcement officer had been involved in the purchase of heroin from the defendant on multiple occasions between April 23, 2002 and October 28, 2002. Id. At times, the heroin was delivered by associates of the defendant, the prosecutor indicated. Id. On at least eight occasions, the substance purchased by the undercover officer from the defendant and his subordinates was tested and weighed by law enforcement. Id. In each instance, the substance was determined to contain heroin, and the total amount obtained over the eight occasions was determined to have a net weight of 153.9 grams. Id.

The defendant's agreement that he should receive a three-point enhancement under the United States Sentencing Guidelines, based on his role in the offense, is not only contained in the

plea agreement, (Doc. 54, page 3) but was also addressed at the change of plea hearing.  The prosecutor specifically stated, "The parties agree that there should be an enhancement in light of the defendant's role in the case, and that three levels should be added under Section 3B1.1, subsection B, to resolve in a total offense level of 29." (Transcript of 5/5/03, p. 18).  After the terms of the plea agreement were outlined by the Government and specific points highlighted by the Court, the defendant was asked by the Court, "Mr. Alvarado, does the written plea agreement that was summarized by Mr. Miller, fully and accurately reflect your understanding of the agreement that you've entered into with the government?"  The Defendant answered, "Yes, your Honor." (Transcript of 5/5/03, p. 23).

Sentencing

On October 28, 2003, the defendant appeared before the Court for sentencing.  Because a five-year mandatory minimum applies in this case, the statutory imprisonment range was a minimum of five years and a maximum term of 40 years. 21 U.S.C. 841(b)(1)(B).  The applicable range under the U.S. Sentencing Guidelines was found to be 63 to 78 months.  This is the same guidelines range to which the defendant stipulated in the plea agreement.  In accordance with the plea agreement, the Government recommended a sentence at the low end of guidelines range–a benefit for which the defendant had bargained.[2]  The Court sentenced the defendant to serve a 63 month term of incarceration to be followed by 4 years of supervised release. The term

---

[2]  In addition, the government moved for a three point reduction for acceptance of responsibility and moved to dismiss Counts Two through Twelve as they pertained to the defendant.  The defendant had also bargained for both of these benefits and they were made part of the terms of the plea agreement, in exchange--in part-- or his agreement to plead guilty to Count One and waive his right to appeal or collaterally attack a sentence below 78 months.

of imprisonment imposed was not only the bottom of the agreed upon range, but was only three months above the statutory minimum which the Court was legally required to impose.  Finally, because the term of imprisonment was below 78 months,  the defendant has waived his right to collaterally attack his sentence.

Defendant's Motions Pursuant to 28 U.S.C. §2255

Notwithstanding the above facts, on October 18, 2004, the defendant filed a Motion under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody.  On January 20, 2005, the defendant served the United States Attorney's Office with a Motion to Amend the motion he filed on October 18, 2005.  The defendant filed no direct appeal to challenge his conviction or sentence.

In his § 2255 petition, the defendant seeks to have his sentence vacated and his case remanded for resentencing.  He claims, pursuant to Blakely v. Washington, 124 S. Ct. 2531 (2004),  that his Sixth Amendment Right was violated because he was sentenced under an unconstitutional system, i.e. the U.S. Sentencing Guidelines, which allows fact-finding at sentencing using a preponderance of the evidence standard,  thereby allowing the application of sentencing enhancements not proven beyond a reasonable doubt nor admitted to by the defendant. (Def. Mot., p. 5)  Specifically, the defendant claims that his sentence was based upon relevant conduct and a role enhancement which were not proven beyond a reasonable doubt nor admitted to in the plea agreement. Id.

The defendant also claims, that he was not informed by the Court or his counsel that relevant conduct had to be proven beyond a reasonable doubt and that this failure to inform him of the Government's burden affected his decision. Id.  Further, the defendant claims that this

failure to inform him regarding the burden of proof and agreeing to relevant conduct constitutes ineffective assistance by defense counsel. Id. In his Motion to Amend, the defendant claims that the Court failed to prove the drug quantity or role in the offense beyond a reasonable doubt, that this precluded him from receiving the benefit of the "safety-valve" provision, for which defendant claims he would have qualified.[3]  With this claim, the defendant mingles an assertion that defense counsel provided ineffective assistance because defense counsel advised him to accept the plea and this prevented him from receiving the benefit of the "safety-valve" provision. (Amended Mot., p. 3)

 Government's Opposition to Defendant's Motion

The Government files this memorandum in opposition to the defendant's petition.  First, the Court should deny the defendant's petition because he waived his right to collaterally attack his sentence.  That sentence was at the bottom of the range for which he had bargained and to which he had stipulated and agreed.

Second, although the United States Supreme Court has recently decided, in United States v. Booker, 125 S. Ct. 738 (2005) that the Sixth Amendment rights are affected by mandatory application of the U.S. Sentencing Guidelines, and therefore held that the Guidelines are advisory,  this decision does not apply retroactively to defendants like Mr. Alvarado whose cases were final long before the decision was announced.[4]

---

[3]  Contrary to the instant claim,  the defendant agreed in the written plea agreement, "...that the defendant is not eligible to receive any benefit pursuant to the 'Safety Valve Provision' as set forth in U.S.S.G. §5C1.2.  (Doc. 54, p.3)

[4]  The defendant's Motions claimed relief as a result of the Supreme Court's decision in Blakely v. Washington, 124 S. Ct. 2531 (2004), however Booker is the latest decision in this line of cases and it, unlike Blakely, is binding in this Circuit.

Third, even if the Court reaches the merits of the petition, the defendant has no grounds to attack his sentence pursuant to Booker or Blakely because he admitted, stipulated and agreed to relevant conduct and a three-point enhancement for his role in the offense.

Fourth, Mr. Alvarado further cloaks his Blakely arguments as an ineffective assistance claims. These claims should also fail because the defendant does not meet the first prong of the Strickland test since the advice defense counsel failed to provide (thirteen months in advance of the Blakely decision) would have been legally incorrect advice.

For these reasons, which are discussed in greater detail below, the Court should deny the defendant's Motion and Amended Motion pursuant to §2255.

## II.  DISCUSSION

### A.  The Defendant Waived His Right To Collaterally Challenge His Sentence, therefore, the Court Should Deny the Petition

In the written plea agreement, the defendant agreed not to appeal or collaterally attack his sentence of imprisonment, if it was below 78 months. The Court sentenced the defendant to 63 months of incarceration.  Thus, the waiver provision is enforceable and should be enforced.

In this circuit, a defendant's waiver of the right either to directly appeal or collaterally attack a sentence within an agreed-upon Sentencing Guideline range generally is enforceable. See, e.g., Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001)(upholding effectiveness of waiver of right to attack conviction pursuant to section 2255 petition); United States v. Garcia, 166 F.3d 519, 521 (2d Cir. 1999)(upholding effectiveness of waiver of right to appeal sentence).  Although appellate waivers are not absolute in scope, the circumstances under which courts will decline to enforce a waiver are limited. See United States v. Gomez-Perez, 215

F.3d 315, 319 (2d Cir. 2000) ("These exceptions to the presumption of the enforceability of a

waiver . . . occupy a very circumscribed area of our jurisprudence.").

These exceptions include situations

> when the waiver was not made knowingly, voluntarily, and competently, when the
> sentence was imposed based on constitutionally impermissible factors, such as
> ethnic, racial, or other prohibited biases, when the government breached a plea
> agreement, or when the sentencing court failed to enunciate any rationale for the
> defendant's sentence, thus amounting to an abdication of judicial responsibility
> subject to mandamus.

Id. at 319 (collecting cases)(citations and quotation marks omitted).

A court also may decline to enforce a waiver of the right to file a section 2255 motion

where a defendant claims he agreed to the waiver without effective assistance of counsel. See,

e.g., Frederick v. Warden, 308 F.3d 192, 194-95 (2d Cir. 2002) (citation omitted); United States

v. Hernandez, 242 F.3d 110, 113-14 (2d Cir. 2001) (per curiam) (declining to enforce a waiver of

appellate rights where defendant sought to challenge on appeal the constitutionality of the

process by which the appeal rights were waived).

The defendant does not claim that the appellate waiver was not made knowingly,

voluntarily, and competently. Nor could he, given his plea allocution. The defendant also does

not claim that his sentence was imposed based on ethnic, racial, or other prohibited biases. Nor

does the defendant claim that the Government breached the plea agreement or that the Court

failed to enunciate any rationale for the defendant's sentence. In fact, the defendant fails to

acknowledge that he is filing the §2255 Motion in violation of his waiver. And, he further fails to

offer any reason why the waiver should not be enforced.

Although, the defendant makes ineffective assistance claims, these arise from Blakely-

related factors, i.e. the Government's burden of proof as to relevant conduct and a role in the

offense enhancement.  The defendant does not assert that his appellate or collateral attack rights
were waived as a result of ineffective assistance, i.e. through an unconstitutional process.

As discussed above, the plea agreement contained express language by which the
defendant waived his right to appeal or collaterally attack the conviction.  (Doc. 54, p.4).  The
Government explained these issues in open court. (Tr. 5/5/03, p.20)  Further, the Court ensured
that the defendant  understood this waiver. (Tr. 5/5/03, p.21-22)  There is no doubt that the
defendant was fully aware of the decision he was making.  Because the defendant does not meet
the conditions under which a Court may decline to enforce a waiver of the right to file a  §2255
Motion, this Court should enforce the waiver provision and dismiss the defendant's petition.

The Second Circuit has enforced waivers for petitioners who have waived their right to
collaterally attack the sentence and then attempt to assert a § 2255 claim that ineffective
assistance of counsel led to the imposition of an improper sentence.  See, e.g., Garcia-Santos v.
United States, 273 F.3d 506, 509 (2d Cir. 2001)(upholding effectiveness of waiver of right to
attack conviction pursuant to section 2255 petition); United States v. Garcia, 166 F.3d 519, 521
(2d Cir. 1999)(upholding effectiveness of waiver of right to appeal sentence).   The Court has
commented that:

> [d]espite his effort to dress up his claim as a violation of the Sixth Amendment,
> defendant in reality is challenging the correctness of his sentence under the
> Sentencing Guidelines, and is therefore barred by the plain language of the waiver
> contained in his plea agreement with the government.

 Garcia, 166 F.3d at 522 (quoting United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998);
see also  United States v. Rosa, 123 F.3d 94, 97 (2d Cir. 1997)(upholding waiver of appeal
provision even when the defendant claims that the sentence is illegal under the Sentencing
Guidelines); United States v. Yemitan, 70 F.3d 746, 748 (2d Cir. 1995) ("If this waiver does not

10

preclude a challenge to the sentence as unlawful, then the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants.").

The same rationale should apply in this case. Defendant Alvarado knowingly and willfully pleaded guilty, admitted to the charge and to relevant conduct, stipulated to an enhancement for his role in the offense, and waived his right to collaterally attack his sentence. In spite of these facts, the defendant is attempting just such a collateral attack. If this waiver does not preclude him from litigating meritless <u>Blakely</u> claims, also cloaked as ineffective assistance claims, then the covenants not to appeal or collaterally attack his sentence become meaningless and would "cease to have value." See <u>United States v. Yemitan</u>, 70 F.3d 746, 748 (2d Cir. 1995). The court should enforce the defendant's agreement to forego a collateral attack on his sentence and should summarily dismiss the petition.

**B.     The Defendant's Petition Should Be Denied Because <u>Booker</u> Is Not Retroactive to Cases Like Defendant Alvarado's Which Became Final Before January 12, 2005**

In <u>United States v. Booker</u>, No. 04-104 (U.S. Jan. 12, 2005), the Supreme Court held that defendants have a right to a jury trial on any disputed factual subject that increases the maximum punishment, and that the federal Sentencing Guidelines come within this rule to the extent that their operation is mandatory. <u>McReynolds v. United States</u>, 2005 WL 237642 (7th Cir. Feb. 2, 2005). The Government submits that the principle adopted in <u>Booker</u> constitutes a "new constitutional rule of criminal procedure," which, under <u>Teague v. Lane</u>, 489 U.S. 288 (1989), is not retroactively applicable to cases (like the defendant's) that became final before the decision

was announced.[5]

Although the Supreme Court did not address the retroactivity question in Booker, its decision in Schriro v. Summerlin, 124 S. Ct. 2519 (2004), is all but conclusive on the point. Id. at 2. Summerlin held that Ring v. Arizona, 536 U.S. 584 (2002)—which, like Booker, applied Apprendi's[6] principles to a particular subject—is not retroactive on collateral review. Id. Ring held that because Arizona law authorized imposition of the death penalty only where an aggravating factor was present, under Apprendi the existence of such factor must be proven to a jury, rather than a judge. In Summerlin, the Court determined that Ring cannot be treated as a new substantive rule—meaning, a rule that "alters the range of conduct or the class of persons that the law punishes." McReynolds at 3, citing Summerlin. It observed that "Ring altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules. Id. That is no less true of Booker—or for that matter Apprendi itself. McReynolds, at 3.

Consistent with the reasoning of Summerlin, the Second Circuit had joined every other Court of Appeals to have considered the issue in holding that because Apprendi is a procedural rule that does not fall within the "watershed" exception, it is not retroactively applicable to cases on collateral review. See Coleman v. United States, 329 F.3d 77 (2d Cir.), cert. denied, 124

---

[5] Contrary to defendant Alvarado's claim that a Due Process analysis should be utilized, Courts that have addressed this issued have properly employed a retroactivity analysis. See McReynolds; United States v. Siegelbaum, 2005 WL 196526.

[6] Apprendi v. New Jersey, 530 U.S. 466 (2000).

S. Ct. 840 (2003).[7]  Importantly, the Second Circuit in <u>Coleman</u> held that <u>Apprendi</u> was not a

watershed rule not only despite the difference between using the jury and the judge as factfinder,

but also despite the difference in the two burdens of proof (preponderance-of-the-evidence v.

beyond-a-reasonable-doubt).  In <u>Coleman</u>, the Court pointed out that in order to constitute a

"watershed" rule of criminal procedure, "a rule must not only improve the accuracy of criminal

proceedings, but also alter our understanding of the bedrock procedural elements essential to the

fairness of those proceedings.  In short, it must be a groundbreaking occurrence."  329 F.3d at 88

(internal quotation marks, alterations, and citations omitted).

The Seventh Circuit held in <u>Curtis v. United States,</u> 294 F.3d 841, 843 (7th Cir. 2002),

that <u>Apprendi</u> does not apply retroactively on collateral review, because it "is concerned with the

identity of the decisionmaker, and the quantum of evidence required for a sentence, rather than

with what primary conduct is unlawful".  <u>McReynolds</u> at 3, citing <u>Curtis</u>.  That, too, is equally

true of <u>Booker</u>. <u>McReynolds</u> at 3.   No conduct that was forbidden before <u>Booker</u> is permitted

today; no maximum available sentence has been reduced.  <u>Id.</u>

The Sentencing Guidelines remain in force as written, although they are no longer

mandatorily applied because 18 U.S.C. §3553(b)(1)  no longer governs. <u>Id.</u>  District judges must

continue to follow their approach *as guidelines*, with appellate review to determine whether that

task has been carried out reasonably. <u>Id.</u>  No primary conduct has been made lawful, and none of

---

[7]Accord <u>Sepulveda v. United States</u>, 330 F.3d 55 (1st Cir. 2003); <u>United States v. Swinton</u>, 333 F.3d 481 (3d Cir. 2003); <u>United States v. Sanders</u>, 247 F.3d 139 (4th Cir. 2001); <u>United States v. Brown</u>, 305 F.3d 304 (5th Cir. 2002); <u>Goode v. United States</u>, 305 F.3d 378 (6th Cir. 2002); <u>Curtis v. United States</u>, 294 F.3d 841 (7th Cir. 2002); <u>United States v. Moss</u>, 252 F.3d 993 (8th Cir. 2001); <u>United States v. Sanchez-Cervantes</u>, 282 F.3d 664 (9th Cir. 2002); <u>United States v. Mora</u>, 293 F.3d 1213 (10th Cir. 2002); <u>McCoy v. United States</u>, 266 F.3d 1245 (11th Cir. 2001).

the many factors that affect sentences under the Sentencing Guidelines has been declared invalid. Consequently <u>Booker,</u> like <u>Apprendi</u> and <u>Ring</u>, must be treated as a procedural decision for purposes of retroactivity analysis. <u>Id.</u>

It is unclear which factfinder is more accurate–a judge or a jury. <u>Summerlin</u> at 2525.  And the choice does not make a fundamental difference. <u>DeStefano v. Woods</u>, 392 U.S. 631 (1968). <u>Booker</u> does not in the end move any decision from judge to jury, or change the burden of persuasion. In the remedial portion of <u>Booker,</u> th Court held that decisions about sentencing factors will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application. <u>McReynolds</u>, at 4.  As a practical matter, then, defendant Alvarado's sentence would be determined in the same way if he were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system.[8] That is not a "watershed" change that fundamentally improves the accuracy of the criminal process. See also <u>Curtis</u>, 294 F.3d at 843-44. Therefore, this court should conclude, as the court did in <u>McReynolds</u>, that <u>Booker</u> does not apply retroactively to criminal cases like defendant Alvarado's that became final before its release on January 12, 2005.

**C.    The Court Should Deny the Defendant's <u>Blakely</u> Claim Because He Admitted and Stipulated to Relevant Conduct and an Enhancement for His Role in the Offense**

The defendant falsely that he was sentenced based upon relevant conduct and a role enhancement, "which was not proven beyond a reasonable doubt, nor admitted to

---

[8]  Although the court would enjoy more flexibility, the sentence to be imposed could be no lower than 5 years, because the statutory mandatory minimum applies to defendant Alvarado's offense.

within the plea agreement." (Def. Brief at 5.)  This is patently false.  In the written plea

agreement  in the Guidelines stipulation section, (Doc. 54. p. 3), the defendant specifically agreed

to the following:

> As part of this plea agreement, the Government and the defendant stipulate the defendant's applicable Sentencing Guidelines to be at a range of 63 to 78 months' imprisonment and a fine range of $ 12,500 to $125,000.  **The defendant admits that, for purposes of determining relevant conduct on Count One, more than 100 grams but less than 400 grams of heroin can be attributed to him for sentencing purposes.**  U.S.S.G. § 1B1.3, app. note 1.   The defendant and the Government acknowledge that this stipulation as to the quantity of controlled substance results in a Base Offense Level of 26 under U.S.S.G. § 2D1.1(c)(7).  **The parties further agree and stipulate that three (3) levels are added under U.S.S.G. § 3B1.1(b) for role in the offense.** Three (3) levels are subtracted under U.S.S.G. § 3E1.1 for acceptance of responsibility, as noted above, resulting in a total offense level of 26.  A total offense level 26  with a criminal history category I, which the parties calculate the defendant to be, results in a range of 63 to 78 months' imprisonment (sentencing table) and a fine range of $12,500 to $ 2,000,000 (U.S.S.G. § 5E1.2(c)(3))].
>
> Both the Defendant and the Government acknowledge that he is subject to a 5 year mandatory minimum term of imprisonment.  **Both parties further agree that the defendant is not eligible to receive any benefit pursuant to the "Safety Valve Provision" as set forth in U.S.S.G. § 5C1.2.**
>
> Both parties agree that no other enhancements or departures are appropriate.  Neither the defendant nor the Government will seek a departure from the indicated Guideline range of 63-78 months of incarceration.  The parties further agree that the Government will recommend a sentence at the low end of the guideline range.

Furthermore,  the defendant also agreed in the course of the change of plea hearing,

(Transcript 5/5/03, p. 35) with the Government's summary of the offense conduct.  In <u>Blakely,</u>

the Court did not extend its holding to apply to the U.S. Sentencing Guidelines, and while

Booker does, it only applies to cases where facts NOT admitted to or found by a jury were used

to increase a defendant's guideline range and sentencing within that range was mandatory.

Although, the Guidelines were applied as mandatory in Mr. Alvarado's case, his sentence

became final before January 12, 2005.  Further, he admitted to relevant conduct and role in the

offense.  Therefore, his claims pursuant to Blakely (and Booker) are clearly without merit and the

defendant's Motion should be denied.[9]

## D.    Defendant's Claim That Defense Counsel Was Ineffective for Not Informing Him That the Government Was Required to Prove Relevant Conduct and Role in the Offense Beyond a Reasonable Doubt Should Be Denied Because Such Advice Would Have Been Contrary to the Law at the Time

Defendant Alvarado, who seeks to challenge his sentence on the basis of ineffective

assistance of counsel, bears a heavy burden.  When considering ineffective assistance claims,

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range

of reasonable professional assistance." Strickland, 466 U.S. at 689.

In Strickland, the Supreme Court held that a defendant must establish (1) that his

counsel's performance "fell below an objective standard of reasonableness" and (2) that

---

[9]  One court, declining to decide whether the rule announced in Blakley/Booker applies retroactively, held that, even if those cases were retroactively applied, relief would be limited to persons presently serving a sentence that was enhanced on the basis of contested facts that were not found to be true, beyond a reasonable doubt, nor admitted by the defendant. See United States v. Siegelbaum, 2005 WL 196526 at *3 (D. Or. Jan. 26, 2005). The court noted that only if a defendant actually disputed the facts that resulted in the sentence enhancement, and the court decided the matter against him, can the defendant show that he may have been prejudiced by application of the wrong standard of proof.  To vacate a sentence enhancement on the basis of Blakely/Booker, when a defendant never disputed the facts upon which that enhancement was premised, would confer an unwarranted windfall.  Here, Alvarado, not only did not contest the facts underlying his guideline range, he stipulated to that guideline range and was sentenced at the bottom of that range.

counsel's unprofessional errors actually prejudiced the defense.  Id. at 688.

> To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," [Strickland, 466 U.S.] at 690, and to satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," Id. at 694.

Brown v. Artuz, 124 F.3d 73, 79-80 (2d Cir. 1997).  A defendant must meet both requirements of the Strickland test to demonstrate ineffective assistance of counsel.  If the defendant fails to satisfy one prong, the Court need not consider the other.  Strickland, 466 U.S. at 697.  "The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard."  Linstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

The question raised by this claim is whether defense counsel's performance was objectively reasonable under the first prong of Strickland.  In undertaking this portion of the Strickland analysis, a reviewing court should "not view the challenged conduct through the 'distorting' lens of hindsight but 'from counsel's perspective at the time.'" United States v. Gaskin, 364 F.3d 438, 469 (2d Cir. 2004) (quoting Strickland, 466 U.S. at 689); see also Lockhart v. Fretwell, 506 U.S. 364, 371-72 (1993).

At the time of defendant Alvarado's guilty plea, May 5, 2003, the Government's burden of proof was preponderance of the evidence for sentencing guidelines enhancements including relevant conduct and role in the offense.  United States v. Mulder, 273 F.3d 91 (2nd Cir. 2001) (holding that preponderance of the evidence standard applies even when proposed enhancement

17

would result in a life sentence[10]);  United States v. McLeod, 251 F.3d 78 (2nd Cir. 2001),

(rejecting defendant's post-Apprendi claim that the burden of proof for relevant conduct should

be beyond a reasonable doubt, and holding that preponderance of the evidence standard properly

applied to determine relevant conduct).

      If defense counsel had advised the defendant, (as the defendant now claims should have

been done), that the Government's burden of proof was beyond a reasonable doubt regarding

relevant conduct and an enhancement for role in the offense, then the advice would have been

clearly contrary to the state of the law in this Circuit.  Such advice may have even amounted to

malpractice.

      Defendant Alvarado makes his ineffective assistance claim in the wake of Blakely, and

apparently bases the claim on a burden of proof issue raised in Blakely.  The Blakely decision

was announced more than thirteen months after the defendant pleaded guilty.  Defendant

Alvarado fails to acknowledge that the Supreme Court's later decision in Blakely cannot be

factored into an evaluation of defense counsel's performance.  An attorney's conduct must be

evaluated solely in light of the judicial precedent that existed at the time, because "[a]n attorney

is not required to 'forecast changes or advances in the law.'" Sellan v. Kuhlman, 261 F.3d 303,

315 (2d Cir. 2001) (quoting Jameson v. Coughlin, 22 F.3d 427, 429 (2d Cir.1994)).

"Clairvoyance is not a required attribute of effective representation." United States v.

Gonzalez-Lerma, 71 F.3d 1537, 1541-42 (10th Cir.1995) (holding that trial counsel was not

---

[10]  Although court may consider a downward departure where there is a combination of
circumstances including (1) an enormous upward adjustment (2) for uncharged conduct (3) not
proven at trial and (4) found only by a preponderance of the evidence.  Mulder  at 116, quoting
United States v. Cordoba Murgas, 233 F.3d 704, 708-709 (2nd Cir.  2000).

ineffective for failing to request continuance of sentence until pending legislation, which might have reduced defendant's sentence, was passed); see also Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir.1999) ("[A]s an acknowledgment that law is no exact science, the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized  . . . .") (internal quotation marks and citation omitted).

Moreover, at the time of defendant's Motions, the Second Circuit had determined that Blakely was not binding precedent in the Second Circuit and noted that the federal sentencing guidelines were not before the Supreme Court when it decided Blakely.  United States v. Mincey, 380 F.3d 102, 105 (2nd Cir. 2005). Finally, the remedial portion of the Supreme Court's decision in Booker, establishes that the Government's burden of proof remains preponderance of the evidence as to enhancements under the sentencing guidelines (which are now advisory).  See McReynolds at 4.

Thus, even if we required defense counsel to see into the future, the law in this Circuit has not developed into what the defendant says he should have been told.  Defense counsel was not ineffective; rather, he acted properly and in accordance with the law by not informing the defendant that the government's burden of proof was beyond a reasonable doubt as to relevant conduct and role in the offense.

In the Motion to Amend his §2255 Petition, the Defendant further alleges that the drug quantity was not listed in the indictment, that he would have qualified for the safety valve, and that defense counsel was ineffective because he advised the defendant to accept the plea.  Each of these assertions incorrect.

As discussed earlier in this opposition brief, the offense to which the defendant pleaded

guilty requires as an element of the offense that the Government prove that it was foreseeable to the defendant that the conspiracy involved more than 100 grams of heroin.  Because relevant conduct in this case was 100 to 400 grams of heroin, the guidelines range was the minimum it could be for a conviction under this offense.  In addition, the defendant admitted to the offense and to the relevant conduct.  Therefore, his claim that the drug quantity was not listed in the indictment is meritless.

Second, the defendant claims he qualifies for the benefit of the safety valve provision. This is incorrect and directly contrary to a provision of the plea agreement; the defendant agreed in the plea agreement that he was not eligible for the safety-valve.  When one realizes that the five year mandatory minimum which applies in to Mr. Alvarado's offense precludes any claim under Blakely that his sentence could be reduced to 10-16 months (Def. Memo in Support, p. 9), it becomes necessary to find a way to circumvent the statutory mandatory minimum.  The only ways to get under the five-year mandatory minimum are providing substantial assistance to the government or qualifying for the safety-valve. Since defendant Alvarado did not cooperate with the Government, the defendant has now claimed, in his Motion to Amend his §2255 petition, that he does qualify for the safety valve.  Such claim is completely contrary to the stipulation in the plea agreement, which states, "...  Both parties further agree that the defendant is not eligible to receive any benefit pursuant to the "Safety Valve Provision" as set forth in U.S.S.G. § 5C1.2." Further, the defendant's role in the offense as a manager or organizer specifically disqualifies him benefitting under the safety valve provision. U.S.S.G. § 5C1.2.(a)(4).  Thus, defendant's claim should fail because it is plainly wrong.

The defendant also claims that defense counsel was ineffective for advising him to accept

the plea, because the claims to qualify for the safety valve provision. As stated above, the

defendant's claim that he would qualify for the safety valve provision is plainly wrong. As a

result, his related claim that defense counsel was ineffective for advising him to accept a plea in

which he agreed he was ineligible for the safety valve, must fail. Further, it should be noted that

the defendant received several benefits as a result of guilty plea, all of which were bargained for.

The Government recommended a three-point enhancement for acceptance of responsibility, the

Government moved to dismiss counts Two through Twelve of the Indictment as they pertained to

the defendant, the Government recommended a sentence at the low end of the guidelines range.

Further, the defendant was sentenced by the Court in accordance with the terms of the plea

agreement. In fact, defendant Alvarado ended up with the lowest possible sentence within the

terms of the deal he had bargained for–and that sentence was only three months more than the

five-year mandatory minimum. Thus, the Government submits that not only does the

defendant's claim fail to meet his burden under the first prong of the Strickland test, but also fails

to acknowledge the highly effective assistance that defense counsel provided to defendant

Alvarado's during plea negotiations and at sentencing.

**E.        No Hearing is Necessary for the Court to Resolve the Defendant's Claims**

Finally, the Government does not believe that a hearing is necessary to adjudicate the

defendant's claim. Section 2255 provides that a court shall hold an evidentiary hearing "unless

the motion and the files and records of the case conclusively show that the prisoner is entitled to

no relief." 28 U.S.C. § 2255 (2000). The filing of a section 2255 petition, however, "does not

entitle a petitioner automatically to a hearing." Newfield v. United States, 565 F.2d 203, 207 (2d

Cir. 1977). The Second Circuit has long held that a hearing is not required "where the

21

allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous." United States v. Malcolm, 432 F.2d 809, 812 (2d Cir. 1970). See also Machibroda v. United States, 368 U.S. 487, 485 (1962)("[T]he language of [section 2255] itself recognizes that there are times when allegations of facts outside the record can be fully investigated without requiring the personal presence of the prisoner."). The Court also may expand the record to consider an affidavit from a defendant's counsel and, after considering the expanded record, deny the section 2255 petition absent a hearing. A district court properly may rule on a section 2255 motion without a testimonial hearing where (1) the allegations of the motion, accepted as true, would not entitle the defendant to relief or (2) the documentary record, including any supplementary submissions, such as affidavits, render a testimonial hearing unnecessary. See Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001) ("It was, therefore, within the district court's discretion to choose a middle road that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the Government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing."). Section 2255 itself provides that a "court may entertain and determine [a section 2255] motion without requiring the production of the prisoner at the hearing." See also Rosa v. United States, 170 F. Supp. 2d 388, 398-99 (S.D.N.Y. 2001).

In this case the defendant advances a legal argument based on the previously filed motion to suppress. Because the allegations of the petition, even accepted as true, do not entitle the defendant to relief, the Court may resolve these issues without a hearing.

### III. CONCLUSION

The Government respectfully requests that the Court summarily dismiss the defendant's

petition.

To obtain collateral relief under 28 U.S.C. § 2255, the petitioner must show that his "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Habeas corpus relief is an extraordinary remedy and should only be granted where it is necessary to redress errors which, were they left intact, would "inherently result in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962). The strictness of this standard embodies the recognition that collateral attack upon criminal convictions is "in tension with society's strong interest in [their] finality." Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995). See also Strickland v. Washington, 466 U.S. 668, 693-94 (1983) (recognizing the "profound importance of finality in criminal proceedings.").

In this case, the defendant has defendant waived his right to collaterally attack the sentence. This petition is merely a motion pursuant to Blakely/Booker to receive a lower sentence, although the defendant is foreclosed from any relief under this line of cases because the cases do no apply retroactively and the defendant's admissions and stipulation preclude relief. Even, if the Court reaches the merits of the petition, the defendant's claim that his defense counsel rendered ineffective assistance must fail because it fails to satisfy the Strickland test. The defendant has not established either that defense counsel's representation was deficient or that he suffered any prejudice. Finally, because the record is uncontested and this claim is

23

essentially an effort to gain some after-the-fact windfall from the decision in <u>Blakely</u>, no hearing is required to adjudicate this matter.  The petition should be dismissed.

Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


ANASTASIA ENOS
ASSISTANT UNITED STATES ATTORNEY
450 Main Street
Hartford, Connecticut  06103
Telephone (860) 947-1101
Federal Bar No. CT20451

## <u>CERTIFICATE OF SERVICE</u>

A true and correct copy of the foregoing was forwarded via U.S. Mail, First Class, postage prepaid, on this 11th day of February, 2005 to:

Mr. JONATHAN Alvarado
Reg. Number 15017-014
FCI Fort Dix
P.O. Box 38
Fort Dix, New Jersey  080640


_____
ANASTASIA ENOS
ASSISTANT UNITED STATES ATTORNEY